IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **KIMBERLY M.,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) Case No. 2:22-cv-351<br>) |
| **KILOLO KIJAKAZI,**<br>**Acting Commissioner of Social Security,** | )<br>)<br>) |
| **Defendant.** | )<br>)<br>) |

## REPORT AND RECOMMENDATION

Plaintiff Kimberly M. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 9.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 11, 13. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 11, be **DENIED**, the Commissioner's Motion for Summary

Judgment, ECF No. 13, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on October 11, 2019, alleging disability due to degenerative disc disease, herniated disc, narrowing of the back canal, anxiety, and depression. R. at 72.[1] Plaintiff alleges her disability onset date is October 1, 2017. R. at 72. Plaintiff's application was initially denied on June 26, 2020, and again denied upon reconsideration on February 3, 2021. R. at 152, 172. On March 18, 2021, Plaintiff requested a hearing before an administrative law judge. R. at 190.

A hearing was held on October 13, 2021, at which Plaintiff appeared with counsel before Administrative Law Judge Maryann Bright ("the ALJ"). R. at 39–71. Both Plaintiff and impartial vocational expert Linda Augins ("VE") testified at the hearing. R. at 45–69. On December 6, 2021, the ALJ issued a decision finding Plaintiff not disabled. R. at 15–31. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on June 30, 2022, making the ALJ's decision the final decision of the Commissioner. R. at 1–6.

Having exhausted her administrative remedies, on August 22, 2022, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On November 18, 2022, Plaintiff filed a Motion for Summary Judgment and accompanying brief in support. ECF Nos. 11–12. On December 19, 2022, the Commissioner filed a Motion for Summary Judgment and memorandum in support. ECF Nos. 13–14. Plaintiff did not file a reply. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

---

[1] "R." refers to the certified administrative record that was filed under seal on October 18, 2022. ECF No. 8, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

2

## II. <u>RELEVANT FACTUAL BACKGROUND</u>

Plaintiff alleges disability due to degenerative disc disease, herniated disc, narrowing of the back canal, anxiety, and depression. R. at 72. Plaintiff was thirty-seven years old at the time of her alleged disability onset date of October 1, 2017. R. at 72. Plaintiff lives with her grandmother, wife, and daughter. R. at 46. Plaintiff completed the eighth grade and took classes towards the completion of a GED. R. at 46. Plaintiff previously worked as a jack driver, a floor person, and a sanitation worker, but is not currently working. R. at 47–49.[2]

At the ALJ hearing, the VE testified about jobs that Plaintiff could perform. R. at 64–69. The ALJ presented the VE with three hypotheticals. R. at 65–67. The first hypothetical asked the VE to assume that the hypothetical individual:

> is limited to light exertion. Specifically capable of lifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently. Limited to standing and/or walking approximately four hours per eight-hour workday. Capable of sitting approximately six hours per eight-hour workday with normal breaks. Occasional climbing of ramps and stairs, occasional stooping, crouching, kneeling, crawling. Never climbing ladders, ropes or scaffolds . . . can balance on even surfaces but should avoid walking, standing and crouching upon very narrow, slippery or radically moving surfaces . . . is limited to occasional exposure to vibration and hazards of unprotected heights and dangerous unguarded machinery . . . is able to apply common sense understanding and carry out uninvolved instructions to perform simple, routine and repetitive tasks on a regular and sustained basis to complete a normal workday and week. Capable of completing job tasks requiring only occasional decision making and having only occasional changes in the work setting . . . cannot tolerate fast-paced tasks such as assembly line jobs involving production quotas . . . can tolerate only superficial interaction with coworkers, supervisors and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues. Contact with supervisor still involves necessary instruction.

---

[2] Because Plaintiff's arguments assert only a legal error in the ALJ's decision, the court limits its discussion of Plaintiff's medical history.

3

R. at 65–66. The VE testified that the hypothetical individual could not perform Plaintiff's past jobs but could perform the jobs of linen sorter, mail sorter, and postage machine operator. R. at 66–67.

In the second hypothetical, the ALJ asked the VE to identify additional jobs matching hypothetical one at the sedentary exertional level. R. at 67. The VE testified that at the sedentary work level, a hypothetical person could perform the jobs of envelope addresser, document preparer, and escort vehicle driver. R. at 67.

The third hypothetical modified the social interaction limitations from hypotheticals one and two, and the ALJ asked the VE to assume that "the individual were limited to no interaction with the general public, still superficial interaction with coworkers and supervisors as previously defined[.]" R. at 67. The VE responded that such limitations would not affect any of the light or sedentary jobs previously cited. R. at 67.

The ALJ then asked the VE whether her testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"). R. at 67. The VE responded yes, with the only exception being the DOT does not address the reduced light RFC of standing and walking of four hours. R at 67–68. Additionally, the VE noted the DOT does not address the absences and time off task, and that her testimony on these matters was based on her professional experience. R. at 68.

Plaintiff then posed two hypotheticals to the VE, first asking her to assume that the hypothetical individual would need a cane for ambulation twenty-five percent of the time spent in the workplace. R. at 68. The VE testified that the sedentary jobs would still apply because the job is performed mainly seated and that the reduced, light jobs would allow for an individual to use a cane for ambulating if the individual remained on task for eighty-five percent of the time or higher. R. at 68. Then, the Plaintiff asked the VE what the tolerance for profanity is in the work

4

environments previously mentioned, to which the VE answered, "[profanity is] not tolerated in the workplace." R. at 68–69. The second hypothetical that Plaintiff posed to the VE was to assume that the hypothetical individual was limited to working four hours a day five days a week. R. at 69. The VE confirmed that such a limitation would be part-time work and not "compatible with competitive employment[.]" R. at 69.

### III. <u>THE ALJ'S DECISION</u>

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant

can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 1, 2017. R. at 17. At step two, the ALJ found that Plaintiff had the following severe impairments: herniated nucleus pulposus at L5–S1 and lumbar degenerative disc disease, obesity, major depressive disorder, and illness anxiety disorder. R. at 18. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 18–21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).[3]

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: she can occasionally climb ramps and stairs; occasionally stoop, crouch, kneel, and crawl; never climb ladders, ropes, or scaffolds; balance on even surfaces; should avoid walking, standing, and crouching upon very narrow, slippery, or erratically moving surfaces; occasionally tolerate exposure to vibration and hazards of unprotected heights and dangerous, unguarded machinery; apply commonsense

---

[3] The ALJ compared Plaintiff's physical and mental impairments with the criteria of listings 1.15, 1.16, 12.04, and 12.06. R. at 19.

understanding; carry out uninvolved instructions to perform simple, routine, and repetitive tasks on a regular and sustained basis to complete a normal work day and week; complete job tasks requiring only occasional decision-making; have only occasional changes in the work setting; tolerate only superficial interaction with coworkers, supervisors, and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues and contact with supervisors still involving necessary instruction; and cannot tolerate fast-paced tasks, such as assembly line jobs involving production quotas. R. at 21.

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." R. at 21. The ALJ "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." R. at 21.

At step four, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a jack driver, which is considered medium, semi-skilled work; as a floor worker, which is considered heavy, unskilled work; and as an industrial cleaner, which is considered medium, unskilled work. R. at 29. The ALJ noted that transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the Plaintiff is not disabled regardless of any transferable job skills. R. at 29. While Plaintiff cannot resume her prior employment, the ALJ determined at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy. R. at 29. The ALJ relied on the VE's testimony that Plaintiff could perform the requirements of the following representative occupations: (1) envelope addresser, with approximately 7,000 positions nationally; (2) document

7

preparer, with approximately 30,000 positions nationally; and (3) escort vehicle driver, with approximately 38,000 positions nationally. R. at 30.

The ALJ determined that the VE's testimony was consistent with the information contained in the DOT and noted the VE relied on her professional experience in testifying beyond the information contained in the DOT. R. at 30. The ALJ accepted the VE's testimony and found it persuasive and the ALJ concluded that Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. R. at 30. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, October 1, 2017, through the date of her decision, December 6, 2021. R. at 30–31.

## IV. <u>STANDARD OF REVIEW</u>

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "'evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute

our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ).'" *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises three challenges to the ALJ's decision. First, Plaintiff argues that the ALJ failed to resolve a conflict with the escort vehicle driver occupation, ECF No. 12 at 9, that the ALJ failed to resolve a conflict with the document preparer occupation, ECF No. 12 at 7, and that because there is a conflict with the escort vehicle driver and document preparer occupations, the only occupation remaining is the envelope addresser occupation with only 7,000 jobs available in the national economy, which is insufficient to meet the ALJ's burden at step five, ECF No. 12 at 5. Plaintiff contends 7,000 available envelope addresser positions "is not a significant number pursuant to well-established caselaw" and therefore the ALJ could not rely on that occupation and erred in doing so. ECF No. 12 at 6. As explained in further detail below, there is no conflict with the escort vehicle driver position. Accordingly, Plaintiff's remaining arguments are moot.

### A. The ALJ Did Not Fail to Resolve a Conflict With Respect to the Escort Vehicle Driver Occupation.

Plaintiff argues that the ALJ erred at step five by failing to resolve a conflict between the VE's identification of escort vehicle driver as an occupation Plaintiff could perform and the DOT. ECF No. 12 at 9–12. Specifically, Plaintiff asserts that the escort vehicle driver occupation identified by the VE, and ultimately relied upon by the ALJ, is classified by the DOT as a sedentary

9

occupation. *Id.* at 11. However, Plaintiff asserts that SkillTRAN™ Job Browser Pro ("SkillTRAN")—a resource for DOT data—classifies the escort vehicle driver position as a light occupation. *Id.* Plaintiff contends that because SkillTRAN classifies the escort vehicle driver occupation as a light job and not a sedentary job, the VE's testimony created a conflict that was not acknowledged by either the ALJ or the VE. *Id.*

In response, the Commissioner argues that the ALJ did not err at step five because there is no apparent conflict created by the VE's identification of the escort vehicle driver occupation. ECF No. 14 at 6–7. The Commissioner argues that the DOT definition of escort vehicle driver corroborated the VE's testimony that the job was sedentary work. *Id.* at 6–11. Furthermore, the Commissioner asserts even if there exists disagreement about the DOT's classification of escort vehicle driver as sedentary work, the administrative record "contains [VE] testimony that only harmonizes with the DOT" and the Plaintiff fails to provide rebuttal evidence. *Id.* at 11. According to the Commissioner, the ALJ has no obligation to consider conflicts between the VE's testimony and SkillTRAN's job analysis, especially absent evidence in the administrative record. *Id.* at 8–11.

At step five of the sequential analysis, the burden shifts to the Commissioner, and the ALJ must determine whether the claimant can perform work that exists in the national economy considering the claimant's RFC, age, education, and work experience. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). To meet this burden, the ALJ may rely on the DOT, and may elicit testimony from a VE to "address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Pearson*, 810 F.3d at 207. If the VE's testimony conflicts with the DOT, the ALJ must "inquire, on the record, . . .

whether the vocational expert's testimony conflicts with the [DOT], and also requires that the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the [DOT]." *Id.* at 207–08 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)) (internal quotations omitted). The ALJ has an affirmative and independent duty to identify and resolve apparent conflicts between the VE's testimony and the DOT. *Id.* at 208 (noting that the VE's affirmative response when asked if her testimony conflicts with the DOT is not enough to fulfill the ALJ's duty). If the ALJ resolves the conflict by determining the VE's explanation is reasonable, and further explains why the VE's explanation is reasonable, then the ALJ can rely on the VE's testimony to support an ALJ's disability determination. *Id.*

Job Browser Pro, often referred to as "SkillTRAN,"[4] is a statistical database that provides a searchable copy of the DOT, allowing users to search for jobs by job title, DOT code or keyword(s) in the title, and task description. *SkillTRAN*, https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro (last visited June 26, 2023). SkillTRAN estimates employment numbers by cross-referencing data from multiple administratively recognized sources such as the DOT, the Occupational Outlook Handbook (OOH), Occupational Employment Statistics (OES), and census reports. *Id.* In an internal memorandum circulated to regional management officers, the Social Security Administration's Director of the Division of Field Procedures listed SkillTRAN as an acceptable version of the DOT and stated that the database met the requirements of Social Security regulations. Memorandum from Susan Swansiger, Dir., Div. of Field Procedures, SSA, to Reg'l Mgmt. Officers (Dec. 28, 2009). SkillTRAN is also recognized by courts and vocational experts as a reliable source for estimating

---

[4] To clarify, SkillTRAN, LLC is a limited liability corporation that produces a database called "Job Browser Pro." *SkillTRAN*, https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro (last visited June 26, 2023). However, to be consistent with how most courts refer to the database, this court will also refer to it as "SkillTRAN."

the number of job positions available in the national economy. *See Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018) ("SkillTRAN's software has been recognized . . . to be widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy."); *Collins v. Berryhill*, No. 3:17cv633, 2018 WL 4232888, at *10 (E.D. Va. Aug. 20, 2018) (finding that the VE properly relied on data that she retrieved from SkillTRAN Job Browser Pro).

SkillTRAN takes a different position from the DOT on the proper exertion level for the escort vehicle driver occupation. The DOT definition for the escort vehicle driver occupation classifies the job as "sedentary" work. *See* DOT, 919.663-022 Escort-Vehicle Driver, 1991 WL 687886. According to SkillTRAN, however, the escort vehicle driver occupation is not "sedentary" work but rather "light" work, and the Department of Labor "erred" in classifying the occupation as "sedentary." *SkillTRAN*, https://skilltran.com/index.php/support-area/documentation/266-escort-vehicle-driver (last visited June 26, 2023). Plaintiff contends that because SkillTRAN contains reliable information that is contradictory to the DOT, the ALJ was required to resolve a conflict between the sedentary and light exertion level classifications. ECF No. 12 at 9–12.

Courts have consistently held that the ALJ is not obligated to resolve conflicts between the VE's testimony and non-DOT sources. *See, e.g., Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018) (holding that an apparent conflict is one that is "reasonably ascertainable or evident from a review of **the DOT and the VE's testimony**") (emphasis added); *Spurlock v. Berryhill*, No. 1:17-cv-411, 2018 WL 791302, at *20–21 (M.D.N.C. Feb. 8, 2018) (finding that ALJs are required to resolve apparent conflicts "<u>only</u> between the VE's testimony and the <u>DOT</u>."); *Wendei L.P. v. Comm'r of Soc. Sec.*, No. C18-5907, 2020 WL 606591, at *1 (W.D. Wash. Feb. 6, 2020) (finding no conflict between the VE's testimony and the DOT because

Plaintiff's objections were based on SkillTRAN and added limitations that did not appear in the DOT). Thus, because SkillTRAN is a non-DOT source, courts have generally held ALJs are not required to resolve a conflict between it and a VE's testimony.[5] For example, in *Sansom v. Saul*, the Middle District of Florida found that the plaintiff incorrectly relied on SkillTRAN to show an apparent conflict involving SkillTRAN's description of jobs and the VE's testimony. No. 8:20cv775, 2021 WL 3476598, at * 6–7 (M.D. Fla. June 30, 2021) ("[T]he ALJ must identify and resolve apparent conflicts between the DOT and VE testimony.").

Although there is no obligation for the ALJ to resolve conflicts between the VE's testimony and SkillTRAN, some courts have held that the ALJ would be required to resolve this type of conflict if it was presented to the ALJ. *Chavez v. Berryhill*, 895 F.3d 962, 970-71 (7th Cir. 2018) ("Before accepting a VE's job-number estimate, the ALJ, when confronted by a claimant's challenge, must require the VE to offer a reasoned and principled explanation."); *Leo v. Saul*, No. 1:18cv00977, 2020 WL 888600, at *10 (D. N.M. Feb. 24, 2020) (finding that the ALJ properly relied on the VE's job number estimates where the VE used both DOT and SkillTRAN data). However, if SkillTRAN data was raised after the hearing, courts have held that there is no obligation for the ALJ to consider this argument. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009–10 (11th Cir. 2020) ("'[W]e will look only to the evidence actually presented to the ALJ.'") (citing *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)); *Adrienna H. v. Kijakazi*, No. 2:22-cv-05487, 2023 WL 4091226, at *7 (C.D. Cal. June 20, 2023) (finding that the plaintiff failed to preserve her challenge to the VE's job number estimates by not objecting at the hearing

---

[5] Similarly, courts have held that ALJs have no obligation to resolve conflicts with other non-DOT sources such as County Business Patterns (CBP), the Occupational Outlook Handbook (OOH), or O*NET. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (finding that the ALJ is not required to sua sponte take administrative notice of CBP or OOH data); *Everhart v. Berryhill*, No. 4:17-cv-76, 2018 WL 446323, at *2 (S.D. Ind. Jan. 17, 2018) ("[T]he applicable regulation and ruling require that the expert's testimony be consistent with the *DOT*, not with any other source such as the O*NET.").

13

or submitting evidence of SkillTRAN data to be included in the record); *Mesa v. Kijakazi*, No. 21-20424-Civ, 2022 WL 4369733, at *14 (S.D. Fla. May 11, 2022) (noting that the plaintiff's post-hearing SkillTRAN research was unpersuasive because the plaintiff did not confront the VE with the data during the hearing), *report and recommendation adopted*, No. 21-20424-Civ, 2022 WL 4366950 (S.D. Fla. Sept. 21, 2022). When plaintiffs fail to raise any conflict between a VE's testimony and SkillTRAN data at the hearing, courts have generally held ALJs can reasonably rely on the VE's testimony about to the representative jobs plaintiffs can perform. *See Alan C. v. Kijakazi*, No. 20 C 7757, 2023 WL 2915404, at *7 (N.D. Ill. Apr. 12, 2023); *Cynthia T. v. Saul*, No. 18cv50288, 2020 WL 564223, at *5 (N.D. Ill. Feb. 5, 2020) ("Because plaintiff failed to raise any conflict at the administrative hearing and failed to argue any obvious conflict on appeal, the ALJ was entitled to rely on the VE's uncontradicted testimony.").

Here, the ALJ had no obligation to resolve any conflict between the VE's testimony and the SkillTRAN. Although SkillTRAN is a reliable source, courts have repeatedly held that an ALJ is not required to resolve conflicts between the VE's testimony and SkillTRAN.[6] As explained, the ALJ is required to resolve conflicts only between the VE and the DOT. Plaintiff did not raise evidence from SkillTRAN at the hearing or otherwise during the administrative process that would have created an obligation for the ALJ to consider SkillTRAN data. Rather, Plaintiff raised SkillTRAN data for the first time in the instant challenge to the ALJ's decision. Accordingly, the ALJ did not fail to resolve a conflict with respect to the escort vehicle driver occupation.

---

[6] One case that did hold that the ALJ was required to resolve such conflicts is *Sinclair v. Berryhill*, 266 F. Supp. 3d 545 (D. Mass. 2017). However, *Sinclair*, which lacks any controlling authority since it arises from another district court, is distinguishable on two important grounds. First, the *Sinclair* court determined that the ALJ's step five finding was unsupported by substantial evidence because the DOT job descriptions in question were obsolete, not because of an apparent unresolved conflict under the Social Security regulations. 266 F. Supp. 3d at 562. Second, the VE in Sinclair had testified that the DOT job descriptions were "out-of-date," thereby establishing a conflict between the VE's testimony and the DOT. which was not the case here. *Id.* at 560.

14

### B. Plaintiff's Remaining Arguments Are Moot Because There Are a Significant Number of Escort Vehicle Driver Jobs Available in the National Economy.

Plaintiff raises two additional arguments: (1) the document preparer occupation created an unresolved, apparent conflict between the VE's testimony and Plaintiff's RFC, and (2) the envelope addresser occupation does not exist in significant numbers in the national economy. *See* ECF No. 12 at 5–9. However, those arguments are moot because there are a significant number of escort vehicle driver positions available in the national economy, which satisfies the ALJ's obligation at step five of the sequential analysis.

At step five of the sequential analysis, the burden shifts to the Commissioner, and the ALJ must determine whether the claimant can perform work that exists in the national economy considering the claimant's RFC, age, education, and work experience. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). So long as the ALJ identifies at least one occupation existing in significant numbers in the national economy that the claimant can perform, the ALJ satisfies his or her burden at step five. *See Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 859 (N.D.W. Va. 2009); *Fenton v. Saul*, No. 4:19cv72, 2020 WL 6380134, at *7 (E.D. Va. June 30, 2020), *report and recommendation adopted*, No. 4:19cv72, 2020 WL 5587710 (E.D. Va. Sept. 17, 2020).

The Social Security Administration has not adopted a bright line rule for a certain number of jobs to qualify as "significant" to meet the ALJ's burden at step five. *See Mayo v. Astrue*, No. 3:10cv866, 2012 WL 859344, at *12 (E.D. Va. Feb. 24, 2012), *report and recommendation adopted*, No. 3:10cv866, 2012 WL 859557 (E.D. Va. Mar. 13, 2012). Courts around the country have generally held that numbers below 38,000 positions in the national economy are still "significant" numbers. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (finding 30,000 jobs nationwide to be a significant number); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding that 25,000 jobs likely represent a nationally significant number); *Young v.*

15

*Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (holding that 20,000 jobs is sufficient to support a finding that work exists in significant numbers in the national economy); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy significant); *Marco R. M. v. Kijakazi*, No. 2:21cv38, 2022 WL 257840, at *8 (E.D. Va. Jan. 10, 2022) (finding that courts around the country have generally held at least 10,000 positions in the national economy to be significant), *report and recommendation adopted*, No. 2:21cv38, 2022 WL 256501 (Jan. 26, 2022); *Crumbley v. Colvin*, No. 3:15cv445, 2016 WL 3660419, at *6 (E.D. Va. June 7, 2016) (finding 32,000 jobs nationally satisfied the ALJ's step five burden), *report and recommendation adopted*, No. 3:15cv445, 2016 WL 3670805 (July 5, 2016); *Aleong v. Berryhill*, No. 3:17cv744, 2018 WL 5020045, at *15 (E.D. Va. Oct. 1, 2018) (finding 15,000 jobs in the national economy satisfied the ALJ's step five burden), *report and recommendation adopted*, No. 3:17cv744, 2018 WL 5018452 (Oct. 16, 2018).

Here, the escort vehicle driver occupation exists with 38,000 positions available nationally. R. at 30. Plaintiff does not dispute that 38,000 positions nationally constitute a significant number of jobs. Accordingly, the ALJ satisfied her burden at step five by identifying at least one occupation that exists in significant numbers in the national economy that Plaintiff can perform. Because at least one occupation exists in significant numbers in the national economy, Plaintiff's arguments that there is a conflict with both the document preparer occupation and the envelope addresser occupation are moot.

## VI. **RECOMMENDATION**

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 11, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF

No. 13, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 11, 2023

17